**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                    Case No.  3:18-cr-83-J-34JRK

PEDRO SANCHEZ

_____

# O R D E R

**THIS CAUSE** is before the Court on the Defendant, Pedro Sanchez's Oral Motion for Judgment of Acquittal (Doc. 47, Motion), made on November 21, 2018.  In the Motion, Sanchez asserts that the Government failed to present sufficient evidence to satisfy the interstate commerce element required by the federal arson statute, 18 U.S.C. § 844(i), under which he has been charged.  See Doc. 1 at 1 (Indictment) filed May 9, 2018.  Both the Defendant and the Government have submitted memoranda to the Court on the matter.  See Defendant's Corrected Trial Memorandum on the Proof Required to Satisfy the Interstate Commerce Element of the Federal Arson Statute (Doc. 43, Defendant's Memorandum), filed November 16, 2018; United States' Proposed Statement of the Case and Voir Dire Examination Questions (Doc. 46, Government's Memorandum), filed November 19, 2018.  Additionally, the Court heard argument from counsel on November 21, 2018.  See Clerk's Minutes (Doc. 48, Clerk's Minutes), filed November 21, 2018.  Therefore the matter is ripe for the Court's consideration.

## I.    Standard of Review

Rule 29 of the Federal Rules of Criminal Procedure (Rule(s)), governs a court's consideration of a defendant's request for a judgment of acquittal.  Rule 29 directs that ".

. . after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Rule 29(a). In evaluating such a motion, the Court must view the evidence in the light most favorable to the Government and make "all reasonable inferences and credibility choices" in the government's favor." United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011) (citations omitted). Ultimately, the Court must deny the motion "if a reasonable fact finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." Id. (citing United States v. Descent, 292 F.3d 703, 706 (11th Cir. 2002)).

## II.     Background and Arguments of the Parties

A grand jury sitting in the Middle District of Florida returned an Indictment charging Sanchez with violating the federal arson statute, 18 U.S.C. § 844(i)[1] by "maliciously damag[ing] and attempt[ing] to damage and destroy, by means of fire, the property of REO Asset Acquisition, LLC and the structure, including an attached two car garage, located at 8579 North Lamanto Avenue, Jacksonville, Florida, used interstate commerce and in an activity affecting interstate commerce." Indictment at 1. On November 21, 2018, Sanchez waived his right to a jury trial, see Doc. 49 (Waiver to Jury Trial), and proceeded to a bench trial on stipulated facts. See Clerk's Minutes. In doing so, he entered into a stipulation of facts relating to the case. See Doc. 50 (Stipulation), filed

---

[1] Section 844(i) provides that
> [w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

18 U.S.C. § 844(i).

November, 21, 2018.  For the purposes of the bench trial, the Stipulation establishes beyond a reasonable doubt that on January 10, 2018, Sanchez maliciously damaged with the intent to destroy by fire a house located at 8579 North Lamanto Avenue, Jacksonville, FL ("Lamanto House"), which was owned by REO Asset Acquisition, LLC ("REO"). Stipulation at 1.  REO is located in Golden, Colorado, and was formed in 2007.  Id.  REO

> initially bought a portfolio of loans containing mortgages.  Through acquiring the properties underlying the mortgages, the owners of REO intended to sell the portfolio of homes, however, due to the market collapse, they chose to rent the homes instead and wait for the housing market to recover.  REO owned approximately 100-125 houses throughout the United States, including California, Washington, Arizona, Nevada, Texas, Delaware, Connecticut, Pennsylvania, Indiana, Missouri, Florida, and Colorado.  In early 2016, REO decided to stop leasing its properties and renovate their homes for sale once the current leases in the homes expired.

Id. at 1-2.

For those properties REO owned in Jacksonville, FL, REO hired a local company, Lighthouse Property Management & Realty of Jacksonville ("Lighthouse") to oversee the rental and management of the properties, including the Lamanto House.  Id. at 2.  Lighthouse advertised the Lamanto House for rent through a variety of local and national websites, id., and provided REO rent for the property by direct deposit into REO's bank in Denver, Colorado.  Id.  For approximately seven years, the "Lamanto house was rented out to tenants."  Id. at 3.  The most recent lease on the Lomanto house was due to expire on July 31, 2017.  Id.  Before it did so, REO assigned the Lamanto House to Sanchez to renovate it for sale.  Id.  Beginning in August 2017, REO, through Sanchez, was working "to renovate the Lamanto House and prepare it for sale."  Id.  The house remained vacant as it underwent "extensive repairs."  Id.  During this time, the house was insured with "IRG Underwriters, now known as Landmark Insurance Group," id. at 4, through a broker in

Colorado.  Id.  The

> policy covered multiple uses including rental and mere use by the property
> owner.  At the time of the fire, REO had not informed IRG that the Lamanto
> House no longer had tenants.  In the event the Lamanto House did not sell
> or did not receive a good offer, REO intended to rent the home out again as
> it had previously done.

Id.

To facilitate Sanchez's work, REO provided Sanchez with a credit card to use for purchases to improve the Lamanto House, as well as for other REO properties in Jacksonville.  Id.  REO also wired money to Sanchez from its Colorado bank to further the renovations and to pay Sanchez.  Id. at 3-4.  On January 10, 2018, Sanchez set the Lamanto House on fire, id., resulting in $64,000 worth of damage to the property.  Id. at 4-5.

At the conclusion of the bench trial, after the Court had accepted the parties' Stipulation, Sanchez made an oral motion for judgment of acquittal.  He asserted that the evidence before the Court is insufficient to convict him under 18 U.S.C. § 844(i), because the facts do not establish the required interstate commerce element of the federal felony arson statute.  See Motion; Defendant's Memorandum at 2.  In particular, Sanchez argues that because the Lamanto House had been unrented and unoccupied for six months prior to the fire, it cannot be considered to be "used in interstate . . . commerce."  18 U.S.C. § 844(i); Defendant's Memorandum at 2.  He therefore argues that the evidence is insufficient to support a conviction for violation of the federal arson statute.  Defendant's Memorandum at 24.  In contrast, the Government argues the evidence is sufficient to support a finding of guilt under § 844(i).  It contends that the Lamanto House was an item of inventory owned by REO and had any number of other connections to interstate

4

commerce sufficient to support a guilty verdict against Sanchez for setting fire to the building. Government's Memorandum at 4-10. Therefore, the Government asserts that the interstate commerce element required by § 844(i) is satisfied.

### III. Discussion

The sole disputed element of the charged offense is whether the facts admitted by Sanchez are sufficient to satisfy § 844(i)'s requirement that the structure he admitted burning, the Lamanto House, was a building "used in interstate . . . commerce." <u>Id.</u>

As referenced above, § 844(i) commands that

> [w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property <u>used in interstate or foreign commerce</u> or in <u>any activity affecting interstate or foreign commerce</u> shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

18 U.S.C. § 844(i) (emphasis added). In evaluating this language, the Supreme Court has determined that the statute's terms apply only

> to property that is "used" in an "activity" that affects commerce. The rental of real estate is unquestionably such an activity. We need not rely on the connection between the market for residential units and the interstate movement of people, to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties.

<u>Russell v. United States</u>, 471 U.S. 858, 862 (1985) (citations omitted). Examining further the language of the federal arson statute in <u>Jones v. United States</u>, 529 U.S. 848 (2000), the Supreme Court laid out a basic analytical framework for determining whether a burned structure fell within the scope of § 844(i). The Supreme Court explained that "the proper inquiry . . . is into the function of the building itself, and then a determination of whether that function affects interstate commerce." <u>Id.</u> at 854-55 (internal citations and quotations omitted). The Court went on to state that the language "used in commerce" "is most

sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." Id. Accordingly, in evaluating the question before it, specifically, whether the arson of an owner-occupied residence fell within the purview of § 844(i), the Supreme Court answered in the negative, noting that "[t]he home's only 'active employment' . . . was for the everyday living of [the defendant's cousin] and his family. . . . He did not use the residence for any trade or business." Id. at 856. As such, the Supreme Court held that § 844(i) did not apply to the arson of an owner-occupied private residence. Id. at 854.

Following the dictates of Jones and Russell, the Eleventh Circuit Court of Appeals has identified a three-part inquiry to determine whether a structure falls within the scope of § 844(i). United States v. Odom, 252 F.3d 1289, 1284 (11th Cir. 2001). A court must determine the following: "(1) What is the function of the building? (2) Is the function of the building involved in commerce? (3) Does the commerce in which the building is involved sufficiently affect interstate commerce?" Id. at 1294. In determining whether the structure at issue in Odom, a church, was involved in commerce, the Eleventh Circuit observed that "[t]he purchase and receipt of goods or services necessary for or common to the maintenance of any building, such as gas, electricity, insurance, or mortgage loans, do not prove that the function of the building is to engage in commerce." Id. 1295 (citing Jones, 592 U.S. at 856). Rather, the structure "must be 'actively employ[ed] for commercial purposes'" in order to satisfy § 844(i)'s "used in commerce" language. Id. (quoting Jones, 529 U.S. at 855 (alteration in original)). Additionally, to satisfy the nexus between the function of the structure and interstate commerce, "the government must show that the function of the property involves the active engagement in commerce and

the property either has a direct and regular connection to interstate commerce, or a substantial connection to interstate commerce . . . ." Id. at 1296 (internal citations and quotations omitted).

In Odom, the Eleventh Circuit concluded that the church at issue did not constitute a building used in interstate commerce, and as such was not covered by the § 844(i). Id. at 1297. While the church did receive donations from out-of-state donors, utilized Bibles and prayer books it had purchased from an out-of-state source, and contributed "to an out-of-state church organization through its membership in [an] in-state organization . . . [,] [t]hese 'connections' to interstate commerce [were] too passive, minimal and too indirect to substantially affect interstate commerce." Id. at 1296-96. Therefore, the court reversed the convictions under § 844(i) of those persons who set fire to the church.

In United States v. Morrison, 218 Fed. Appx. 933 (11th Cir. 2007),[2] the Eleventh Circuit again addressed the reach of § 844(i), this time in the context of arson to a building that had been rented for use as a bar and restaurant. Morrison, 218 Fed. Appx. at 936. There, the court noted that its decision in Odom clarified that the "government needed to prove more than a 'nominal' connection to interstate commerce . . . ." Morrison, 218 Fed. Appx. at 944. The Morrison court went on to provide examples of the types of property that would fall within § 844(i)'s purview, along with examples of property that failed to meet the statute's "used in commerce" requirement. Id. at 944-45.

> With respect to the parameters of the requisite interstate commerce nexus under § 844(i), we have affirmed a conviction under § 844(i) on a showing that the burned down public restaurant in question catered to interstate

---

[2] Although an unpublished opinion is not binding . . . , it is persuasive authority. United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

travelers and served alcohol and used natural gas, both of which originated out of state; determined that the nexus was satisfied where the burned down building was a commercial building in which the defendant rented his restaurant space, where he purchased products from out-of-state manufacturers, and where the restaurant, had it opened, would have been a public restaurant available to interstate travelers; and affirmed a defendant's conviction under § 844(i) after concluding that the government satisfied the interstate commerce nexus requirement through its proof that the truck in question was the subject of an interstate lease at the time of its attempted bombing and, thus, was a tangible component of interstate commerce.

We have also [held], however, that the § 844(i) interstate commerce nexus is not satisfied where the government's only evidence to establish the requisite interstate commerce nexus was that the owner of the burned down house occasionally produced memoranda on his home computer, which he then printed off and hand-delivered to his co-workers at his place of employment, a corporation that engaged in international business[;] and to show that the church at issue was used in or affected interstate commerce was evidence that the church received donations from a few out-of-state donors; utilized some Bibles and prayer books that had been purchased from an out-of-state distributor; obtained natural gas from an out-of-state vendor; and indirectly contributed to an out-of-state church organization through its membership in the in-state church organization.

Id. (internal quotations citations omitted).  Noting that the function of the structure at the time of the fire was "a commercial restaurant and bar business," the court observed that its alcohol purchases from out of state vendors and catering sales to out of state customers, standing alone, may have been sufficient to satisfy the interstate commerce nexus.  Id.  Rather than relying on those contacts, the court held that "the fact that the property was rental real estate 'unquestionably' demonstrated that the building was actively employed in, and had a substantial effect on an activity involving interstate commerce, and thus was covered by § 844(i)."  Id. at 945 (citing Russell, 471 U.S. at 862).  Thus, the Government's evidence was sufficient to sustain the arson conviction.  Id.

Supreme Court and Eleventh Circuit precedent, however, instruct that § 844(i)'s "used in commerce" language is not boundless.  See Jones, 529 U.S. at 855; Morrison, 218 Fed. Appx. at 944; Odom, 252 F.3d at 1296.  While rental properties, as well as properties used for business or commercial purposes fall within the statute's scope,  see Russell, 471 U.S. at 862; Morrison, 218 Fed. Appx. at 944-45, owner occupied residences and other structures whose connections to interstate commerce are nominal and passive do not.  See Jones, 529 U.S. at 855; Odom, 252 F.3d at 1297.  What remains unanswered by this precedent, and is at issue in this case, is whether a rental property that has temporarily been removed from the market for renovations, and which the owner intends to return to market for sale or re-lease, constitutes property "used in interstate commerce" under § 844(i).  Although neither the Supreme Court, or the Eleventh Circuit have directly addressed the question, the overwhelming authority from other federal circuit courts persuades the undersigned to conclude that it does.

The Court begins by noting that several courts of appeal have determined that once the business nature of a property is established, and barring any evidence of the owner's intention to permanently remove the property from the stream of commerce, a court should presume that the property falls within the scope of § 844(i).  See United States v. White, 771 F.3d 225, 231 (4th Cir. 2014); United States v. Troy, 618 F.3d 27, 32 (1st Cir. 2010); United States v. Iodice, 525 F.3d 179, 184 (2d Cir. 2008); Martin v. United States, 333 F.3d 819, 821 (7th Cir. 2003); United States v. Estate of Parsons, 314 F.3d 745, 752 (5th Cir. 2002), vacated on other grounds by 367 F.3d 409 (5th Cir. 2004). These cases and others reflect that property that is temporarily vacant or removed from

the commercial market, can nonetheless constitute property "used in commerce" for the purposes of § 844(i).

For example, in <u>Troy</u>, a nightclub owner closed her business due to challenges she encountered in complying with recently passed local safety regulations and ordinances. 618 F.3d at 29-30. The owner was subsequently convicted under § 844(i) for attempting to burn down the building. On appeal, the owner argued that because the building and associated business was closed, it could not be deemed a property "used in interstate commerce" as required by § 844(i). <u>Id.</u> at 31. The First Circuit Court of Appeals disagreed noting that the statute's language and the Supreme Court interpretation of that language should not be construed "as suggesting that all commercial establishments, once closed for business for any period or purpose, move beyond the reach of" § 844(i). <u>Id.</u> at 32. The First Circuit summarized the pertinent facts before it as follows:

> after the nightclub and bar had closed, the [defendant] took substantial and definite steps to preserve the value of the business. [A witness] testified that after [the nightclub] closed on December 31, 2006, the [defendant] told her not to cancel bands that had been booked for performances at [the nightclub] later in 2007. Indeed, the [defendant] told [the witness] to "continue booking bands" for future engagements. The government also presented evidence that the [defendant] hired a structural engineer in early 2007 to make repairs to [the nightclub's] floor. Then, too, there was evidence that several other repairs were effected in response to defects reported by [local government inspectors]. These included the installation of new signage, the replacement of outdated safety equipment, and modernization of the building's electrical system.
> In addition, the [defendant] took actions aimed at obtaining a valid liquor license for [the nightclub] following the revocation of the original license at the end of 2006. [The defendant] filed an application for a new license. She also filed suit against the Town in an effort to recoup the original license. The logical conclusion to be drawn from these efforts is that [the defendant] was trying to position [the nightclub] for reopening.

<u>Id.</u> at 32–33. Based on this evidence, the First Circuit determined that the nightclub was a property used in interstate commerce as required by § 844(i). <u>Id.</u> at 33.

Similarly, in Iodice, the Second Circuit Court of Appeals applied § 844(i) in the context of the arson of a movable diner that had been closed for a year and a half, but which the owner intended to reopen at a new location within another six months. 525 F.3d at 183. After examining the Supreme Court's decision in Jones, and decisions from other circuit courts addressing the applicability of § 844(i), the Second Circuit concluded that

> commercial buildings – specifically, restaurants and rental properties – do not necessarily relinquish their relationship with interstate commerce for purposes of § 844(i) due merely to the fact that they are temporarily vacant. Here, the record contains evidence of [the property owner's] plans and arrangements to relocate and open the then-vacant diner. In particular, [the property owner] testified before the jury that his diner was "complete and ready to open" in October 2001 [weeks before the fire,] and that he had plans to do so in a specific month and at a specific location. In addition, [a co-conspirator in the arson] testified that [he and the defendant] had been hired to burn the diner to prevent it from competing with an existing diner at the new location. This testimony corroborates [the property owner's] account of his pre-arson plans regarding the diner, and it demonstrates that [the property owner] did not keep silent about his plans with his diner. To the contrary, potential competitors apparently knew about those plans and considered them serious enough to warrant the hiring of [the defendant and his co-conspirator] in order to thwart those plans.

Id. at 184–85. Despite the fact that the diner had been closed for over a year and a half, and the owner did not intend to open it for another six months, id. at 181-82, the court determined that the diner still constituted property used in interstate commerce, and thus was covered by § 844(i). Id. at 185.

In United States v. Truman, 581 Fed. Appx. 26 (2d Cir. 2014), the Second Circuit again examined the applicability of § 844(i). There, a defendant challenged his conviction under the federal arson statute where the burned property included space that was being renovated, and a real estate agent had shown the property to potential tenants throughout

the year proceeding the fire.  Id. at 29.  The court determined that the evidence showed

that the company that owned the building

> had invested heavily in renovating the property . . . in order to return it to commercial use, and had engaged a realtor for the purpose of doing so as soon as possible. Additionally, that realtor testified that, at the time of the arson, the first floor of the . . . property was ready for tenants to move in . . . . Because the government presented ample evidence that [the property owner] had undertaken exhaustive "active preparation" to return the property to the stream of commerce, and had made "plans and arrangements" indicating [the property owner's] present intent to put the building to commercial use, a rational trier of fact could have found that the building was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" within the meaning of § 844(i) and our precedents.

Id. at 29.  See also United States v. Dougherty, 706 Fed. Appx. 736, 740 (3d Cir. 2017)

(arson at construction sites for a future warehouse and apartment complex covered under

§ 844(i));  Martin v. United States, 333 F.3d 819, 821-22 (7th Cir. 2003) (arson of

temporarily closed and boarded up apartment building still prosecutable under § 844(i));

Estate of Parsons, 314 F.3d at 752 (arson of hotel currently closed for the season covered

by § 844(i)).

Additionally, the decisions of other courts support the general position that the fact

that a property is temporarily vacant or unused property does not necessarily remove it

from the stream of interstate commerce and thus the reach of § 844(i).  See e.g., White,

771 F.3d at 228, 231 (rental property covered by § 844(i) where tenant still had

possessory rights to rental unit and kept personal belongings in unit, despite not living

there; owner insured property as commercial rental property; and owner told another

individual of his intent to clean the apartment complex so he could rent it out or sell it);

Jennings v. Quintana, 563 Fed. Appx. 882, 885 (3d Cir. 2014) (sale of drugs out of home,

where such sales ceased briefly before arson, and then resumed one month after fire,

brings dwelling within the scope of § 844(i)); United States v. Beilharz, No. 1:11cv1222 (LMB), No. 1:09cr105 (LMB), 2012 WL 2153157, at *3 (E.D. Va. June 12, 2012) (arson of "dwindling" business which was still stocked with inventory, while nonetheless not currently open to the public, was covered by § 844(i)); United States v. Barker, 72 Fed. Appx. 246, 249 (6th Cir. 2003) (§ 844(i) applied to arson of vacant cabins that had not been taken off of the rental market); United States v. Williams, 299 F.3d 250, 255-56 (3d Cir. 2002) (currently vacant building, for which soon to be commencing lease was just signed, was covered by § 844(i)); United States v. Milligan, 3 Fed. Appx. 169, 170-71 (4th Cir. 2001) (arson of recently vacant apartment, where vacancy was a result of defendant landlord evicting tenant, falls under purview of § 844(i)); United States v. Gallagher, 223 F.3d 511, 515-16 (7th Cir. 2000) (defendant's arson of commercial barn containing hay and livestock was covered by §844(i) where owner of barn intended to sell livestock and cease business, but fire occurred prior to full winding down of business). Indeed, the overwhelming weight of authority supports the conclusion that a rental property, while temporarily vacant and off the market, can still constitute a property "used in interstate commerce" for the purposes of § 844(i).

Turning to the present matter before the Court, the Court concludes that the facts admitted by Sanchez pursuant to the Stipulation are sufficient to satisfy the requisite interstate commerce nexus to support a conviction under § 844(i). See Odom, 252 F.3d at 1294 (laying out three part test). First, the Lamanto House functioned as a rental property belonging to REO. Id. (questioning the function of the building); Stipulation at 1-2. Second, the "function of the building involved commerce." Odom, 252 F.3d at 1294. Indeed, while the Lamanto House served as a residence for those who rented it from

REO, the property's underlying purpose was that of a rental property owned by REO for the purpose of generating profits. Stipulation at 1-2; <u>Russell</u>, 471 U.S. at 862 (rental of real estate unquestionably among activities that affect commerce). With the third prong of the <u>Odom</u> test, the Court must determine whether "the commerce in which the building is involved sufficiently affect[s] <u>interstate commerce</u>." <u>Odom</u>, 252 F.3d at 1294 (emphasis supplied). Here the answer turns on whether the Lamanto House's vacant status and absence from the rental market for six months removes it from the reach of § 844(i). Based on the authority discussed above, the Court concludes that it does not.

As discussed above, several courts of appeals have concluded that when a property's business or commercial nature is established, a court should presume that the property falls within the scope of § 844(i), barring any evidence suggesting that the owner intended to permanently remove the property from the stream of interstate commerce. <u>See</u> <u>White</u>, 771 F.3d at 231; <u>Troy</u>, 618 F.3d at 32; <u>Iodice</u>, 525 F.3d at 184; <u>Martin</u>, 333 F.3d at 821; <u>Estate of Parsons</u>, 314 F.3d at 752. The stipulated facts regarding the Lamanto House are sufficient to support a finding that the property's commercial nature had been established and no facts suggest that REO intended to permanently remove the Lamanto House from interstate commerce. The Lamanto House was a property with an established commercial nature as it was one of the many rental properties within REO's inventory. Stipulation at 1-2. While the property had been removed from the rental market for the six months prior to the fire, that removal was for the purpose of renovating the property to prepare it for sale or re-rental. <u>Id</u>. at 3. To further that effort, REO employed the Defendant, Sanchez, to renovate the home for resale or future rentals, and gave him credit cards and wired him funds so that he could complete the renovations. <u>Id</u>.

at 3-4. Additionally, during this period of renovation, REO maintained insurance on the property as if it was a commercial rental property. Id. at 4. See also e.g., White, 771 F.3d at 231 (ongoing insurance of property as a rental); Martin, 333 F.3d at 822 (same); Barker, 72 Fed. Appx at 247 (same); Milligan, 3 Fed. Appx. at 170 (same). These facts belie any suggestion that during the six months that the Lamanto House was vacant, REO had intended for that vacancy to represent a permanent removal of the property from the stream of interstate commerce. As such, this case is similar to those cases in which the courts determined that property temporarily removed from the market nonetheless remained covered by § 844(i). See e.g., Dougherty, 706 Fed. Appx. at 740 (arson at construction sites for a future warehouse and apartment complex); Truman, 581 Fed. Appx. at 29 (rental property being renovated for re-lease); Iodice, 525 F.3d at 183 (diner closed for over one and a half years and set to reopen in another six months); Troy, 618 F.3d at 32-33 (temporarily closed nightclub); Martin, 333 F.3d at 821-22 (temporarily closed and boarded up apartment building); Estate of Parsons, 314 F.3d at 752 (hotel currently closed for the season). Accordingly, the Court concludes that the stipulated facts before it are sufficient, as required by Rule 29, to establish that REO's temporary removal of the Lamanto House from the rental market did not evidence its intent to permanently remove the property from the stream of interstate commerce. Therefore, the Lamanto House falls within the scope of § 844(i), and the statute's interstate commerce requirement is satisfied.

In reaching this conclusion, the Court recognizes that in Odom, the Eleventh Circuit cited with favor two decisions issued by the Eighth Circuit Court of Appeals, United States v. Ryan, 227 F.3d 1058 (8th Cir. 2000), and United States v. Rea, 223 F.3d 741 (8th Cir.

2000), on which Sanchez relies.  <u>Odom,</u> 252 F.3d at 1295; Defendant's Memorandum at

15, 22.  In <u>Odom</u>, the Eleventh Circuit stated

> [t]he mere engagement in commercial activities may not necessarily provide the requisite nexus between the function of the building and interstate commerce. <u>See</u> <u>United States v. Ryan</u>, 227 F.3d 1058, 1061 (8th Cir. 2000) (explaining that a commercial building must still have an active connection to interstate commerce to be covered by § 844(i)); <u>see</u>, <u>e.g.</u>, <u>id.</u> at 1062-63 (concluding a vacant former commercial establishment failed to create a sufficient interstate commerce nexus under § 844(i)); <u>United States v. Rea</u>, 223 F.3d 741, 743 (8th Cir. 2000) (finding that merely because the building is church property does not mean that it meets the interstate commerce requirement for § 844(i)).

<u>Odom</u>, 252 F.3d at 1295.  <u>Rea</u> and <u>Ryan</u>, which were both decided immediately after the

Supreme Court's decision in <u>Jones</u>, emphasized aspects of <u>Jones</u> which directed that §

844(i)'s language regarding property "used in commerce" required that the property at

issue must be in "active employment for commercial purposes, and not merely a passive,

passing, or past connection to commerce."  <u>Jones</u>, 529 U.S. at 854-55; <u>see</u> <u>also</u> <u>Ryan</u>,

227 F.3d at 1061-62; <u>Rea</u>, 223 F.3d at 744.  For example, in <u>Rea</u>, the Eighth Circuit ruled

that a church whose utilities came from out-of-state did not fall within the purview of §

844(i).  <u>Rea</u>, 223 F.3d at 743-44.  More relevant to the instant case, in <u>Ryan</u>, the Eighth

Circuit evaluated whether the arson of a closed fitness center owned by an out-of-state

resident and leased to the owner's own shell corporation, fell within the scope of the "used

in interstate commerce" language in § 844(i).

In <u>Ryan</u>, after the fitness center closed, its owner initiated steps to sell the

business.  <u>Ryan</u>, 227 F.3d at 1060.  However, at the time of the fire, the property was not

listed for sale or rent.  <u>Id.</u>  The Eighth Circuit ruled that the evidence before the court was

insufficient to support a finding that the property was used in interstate commerce such

that it would fall within the scope of § 844(i).  In particular, the Eighth Circuit stated

[t]he evidence adduced at trial is insufficient to satisfy section 844(i)'s interstate commerce requirement, as construed in Jones. That the Fitness Center was owned by an out-of-state resident does not establish the requisite nexus. . . . Likewise, the fact that the [property owner] leased the Fitness Center to his own shell corporation fails to create a sufficient nexus with interstate commerce. Although the Court in Russell v. United States found that an apartment building that was being "used as rental property" and which produced rental income was sufficiently connected to interstate commerce for purposes of section 844(i), the Fitness Center was not similarly used at the time of the fire. [The property owner] was holding the Fitness Center through the formality of a lease agreement with his wholly owned company. Such a passive legal arrangement does not transform an otherwise unused building into actively employed property sufficient to satisfy section 844(i)'s interstate commerce element.

Furthermore, the evidence pertaining to the Fitness Center's closing and its potential sale does not satisfy section 844(i). [The evidence indicated that] the Fitness Center was about to be placed on the market for sale and it had the "potential for ready reentrance as a functioning business in the commercial marketplace. These findings make clear that the Fitness Center was not currently used in commerce or in an activity affecting commerce, and that it merely had a "past connection to commerce," which is insufficient under Jones. Similarly, the bare fact that the Fitness Center was marketable does not constitute active employment for commercial purposes. If this were sufficient to create an interstate commerce nexus under section 844(i), the statute would encompass all property, for all property will sell at some price.

Id. at 1063–64 (citations and quotations omitted).

The Eighth Circuit's analysis of § 844(i), based on its reading of Jones, represents a narrow interpretation of the statute when applied in settings of a property that has been removed from the commercial market for a period of time. Other courts which have evaluated similar situations have distinguished Ryan and declined to follow this seemingly restrictive interpretation of Jones and § 844(i). See e.g. Williams, 299 F.3d at 256 (distinguishing fitness center in Ryan as "permanently closed"); United States v. Jimenez, 256 F.3d 330, 338 n.8 (5th Cir. 2001) (characterizing property in Ryan as "permanently closed"); Milligan, 3 Fed. Appx. at 171 n.4 (describing property in Ryan as suffering from

"business failure"); <u>Beilharz</u>, 2012 WL 2153157 at *2 n.3 (distinguishing fitness center in <u>Ryan</u> as "officially closed").

Indeed, in <u>Troy</u>, the First Circuit cautioned against reading <u>Jones</u> so literally as to suggest that "all commercial establishments, once closed for business for any period of time or purpose, move beyond the reach of section 844(i)." <u>Troy</u>, 618 F.3d at 32. The court noted that the <u>Jones</u> decision was factually distinguishable in that it addressed whether an owner-occupied residence fell within the scope of § 844(i). In doing so, the court cautioned that the <u>Jones</u>' language requiring that property be "actively used" in interstate commerce, rather than in a merely passive, passing or past nature "cannot be transplanted root and branch into the much different terrain" of a case addressing arson of a temporarily closed commercial property. <u>Id.</u> at 31. Thus, the court rejected a strict, mechanical, and narrow reading of <u>Jones</u>, and advocated that a better interpretation and application of <u>Jones</u> to the fact pattern before it was "that a building that is temporarily closed may still remain in active and commercial use." <u>Id.</u> at 32.

Similarly, in <u>Iodice</u>, the Second Circuit warned against applying the language from <u>Jones</u> too narrowly. The court noted that

> [w]e have observed that it is always hazardous to seize upon a single word or phrase in a judicial opinion and build upon it a rule that was not in issue in the case being decided. In that vein, we note that <u>Jones</u> concluded only that § 844(i) did not cover a private, owner-occupied, residential dwelling that served no commercial purpose whatsoever. In doing so, the Court rejected the argument that the structure was "used in" interstate commerce merely due to its receipt of interstate goods like energy and its role in the owner's procurement of insurance and financing. However, the Court did not confront and thus did not address those circumstances that serve to remove a <u>commercial</u> building that would otherwise be covered by § 844(i), but is temporarily inoperative, from the protection of that statute. To the extent that [the defendant] now urges us to adopt an overly literal reading of the "active employment" phrase in <u>Jones</u>, we refuse to do so.

Iodice, 525 F.3d at 183–84 (internal quotations and citations omitted).  See also White, 771 F.3d at 231-32 (rejecting a narrow reading of Jones that would require the property, at the exact moment of being set on fire, to be presently used in commerce); Williams, 299 F.3d at 256-57 (rejecting an "overly-literal and narrow definition of the word 'used' from section 844(i)").  A review of these decisions suggests that the Eighth Circuit's interpretation of Jones in Ryan is too narrow or mechanical and that the better course to follow is to carefully apply the requirements of Jones to the specific facts before the court "in a particular case."  See Williams, 299 F.3d at 256-57; Jimenez, 256 F.3d at 338 n.8; Milligan, 3 Fed. Appx. at 171 n.4; Beilharz, 2012 WL 2153157 at *2 n.3; White, 771 F.3d at 231-32; Troy, 618 F.3d at 32; Iodice, 525 F.3d at 183–84.

Returning to the Eleventh Circuit's decision in Odom, the court there did cite with favor the Eighth Circuit's decisions in Rea and Ryan, as well as the Supreme Court's command in Jones that "a building must have more than a passive, past, or passing connection to interstate commerce."  Odom, 252 F.3d at 1296 (citing Jones, 529 U.S. at 855).  However, like the court in Rea, in Odom the court was evaluating whether the arson of a church fell within the purview of § 844(i).  Therefore, it was entirely appropriate that the Odom court looked to the Eighth Circuit's decision in Rea.  The Odom court concluded that the church's limited receipt of out-of-state donations, its use of a few Bibles and prayer books that had been purchased from out-of-state, and its indirect association with an out-of-state organization were far too passive, past, or passing to establish the requisite connection with interstate commerce to be covered by the federal arson statute. Id. at 1296-97.

However, to the extent the court in <u>Odom</u> relied on <u>Ryan</u> in discussing its application of § 844(i), it is not evident that the Eleventh Circuit intended to adopt <u>Ryan</u>'s specific holding that a closed business structure was not protected under the federal arson statute.  Rather, it appears that the <u>Odom</u> court's citation to <u>Ryan</u> focused on the broader principle from <u>Jones</u> – that when evaluating a property's connection with interstate commerce, the property's connection needed to be active, direct, and regular, rather than more attenuated, as in the form of receiving utilities, being covered by insurance, or being financed by an out-of-state bank.  <u>Id.</u>  Indeed, because the church in <u>Odom</u> was a functioning church and not closed, the Eleventh Circuit had no cause to consider whether it agreed with the more narrow holding from <u>Ryan</u> regarding a temporarily ceasing of "active" use.  Rather, a careful reading of <u>Odom</u> suggests that the Eleventh Circuit relied on <u>Ryan</u> for guidance as to whether a structure with only limited connections to interstate commerce nevertheless had a sufficient connection to satisfy the interstate commerce requirement, not to address or consider the effect of the closure of a business with otherwise sufficient interstate commerce connections or the temporary removal of such a business from the stream of commerce.  Accordingly, the Court does not view <u>Odom</u> as suggesting that the Eleventh Circuit has endorsed the narrow interpretation of <u>Jones</u> as urged by Sanchez.

Viewing all of the evidence as directed by Rule 29, the Court concludes that the stipulated facts before the Court establish that Sanchez set fire to a building, the Lamanto House, which was a rental property belonging to the company REO.  While the Lamanto House had not been rented for the six months prior to the fire, during this time, REO was investing in the property to remodel it to make it ready for sale or re-lease to tenants.  To

do so, REO hired Sanchez to oversee the remodeling work, provided him with credit cards to pay for materials, and provided him with additional funds for his work. During this time, REO also insured the property as a rental unit. All of these facts establish that the Lamanto House served a business or commercial function for REO, and that despite REO's six month removal of the home from the market, REO did not intend to permanently remove the property from the stream of interstate commerce. Therefore, the stipulated facts before the Court are sufficient to establish that the Lamanto House is covered by § 844(i) as a "building . . . used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). As such, the evidence satisfied the interstate commerce requirements of § 844(i). Accordingly, a reasonable fact finder could conclude that the Stipulation established Sanchez's guilt beyond a reasonable doubt. As such, Sanchez's Motion for Judgment of Acquittal is due to be denied.

In light of the foregoing, it is hereby **ORDERED**:

Defendant Pedro Sanchez's Oral Motion for Judgment of Acquittal (Doc. 47) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 3rd day of January, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc26

Copies to:

Counsel of Record