**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                                   Case No.  3:18-cr-83-J-34JRK

PEDRO SANCHEZ

_____

**FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW**
**AND ADJUDICATION OF GUILT**

On November 21, 2018, this Court held a hearing on Defendant, Pedro Sanchez's Waiver of a Jury Trial (Doc. 49, Waiver of Jury Trial), and a bench trial based on an undisputed stipulation of facts (Doc. 50, Stipulation). Sanchez, Sanchez's counsel, Charles Truncale, and counsel for the United States, Ashley Washington, all executed the Stipulation and agreed that the Court should determine from the facts in the Stipulation whether the government proved Sanchez's guilt beyond a reasonable doubt.

Sanchez is before the Court pursuant to a one count indictment (Doc. 1, Indictment) charging him with "maliciously damag[ing] and attempt[ing] to damage and destroy, by means of fire, the property of REO Asset Acquisition, LLC and the structure, including an attached two car garage, located at 8579 North Lamanto Avenue, Jacksonville, Florida, used in interstate commerce and in an activity affecting interstate commerce" in violation of 18 U.S.C. § 844(i). Indictment at 1. Sanchez knowingly, intelligently, and voluntarily waived his right to a jury trial on these charges, see Waiver of Jury Trial, and to the forfeiture of property contained in the Indictment. Further, the Government consented to Sanchez's waiver of a jury trial, and the Court accepted

Sanchez's waiver of his right to a jury trial.

## Findings of Fact

In accordance with Rule 23, Federal Rule of Criminal Procedure (Rule(s)), and the Parties' Stipulation, the Court accepts the facts set forth in the Stipulation as the Court's findings of fact:

1. On January 10, 2018, Sanchez maliciously damaged and attempted to damage and destroy, by means of fire, the property of REO Asset Acquisition, LLC and the structure, including an attached two car garage, located at 8579 North Lamanto Avenue, Jacksonville, Florida.

2. The house at 8579 North Lamanto Avenue ("Lamanto House") was undergoing renovations and belonged to REO Asset Acquisition, LLC ("REO"), a limited liability company headquartered in Golden, Colorado. REO was formed in 2007 and initially bought a portfolio of loans containing mortgages. Through acquiring the properties underlying the mortgages, the owners of REO intended to sell the portfolio of homes, however, due to the housing market collapse, they chose to rent the homes instead and wait for the housing market to recover. REO owned approximately 100-125 houses throughout the United States, including California, Washington, Arizona, Nevada, Texas, Delaware, Connecticut, Pennsylvania, Indiana, Missouri, Florida, and Colorado. In early 2016, REO decided to stop leasing its properties and renovate their homes for sale once the current leases in the homes expired.

3. For REO properties located in Jacksonville, they hired Lighthouse Property Management & Realty of Jacksonville ("Lighthouse") to manage the rental properties. This included advertising, leasing, and maintaining the rental properties. Lighthouse manages properties for national and international owners. Lighthouse entered into a management agreement with REO for the Jacksonville properties, including the Lamanto House. Lighthouse advertised the Lamanto House through a system called Propertyware. This system enabled Lighthouse to list a rental property on 35-45 different property rental websites at once, including national websites such as Zillow and HotPads. Lighthouse provided rental money it collected to REO through direct deposit to REO's bank account at Key Bank in Denver, Colorado. Lighthouse emailed any statements of activity and 1099 statements to REO in Colorado. For any maintenance items greater than $300, Lighthouse contacted REO by email to get permission to complete the maintenance. REO set up the utilities for the rental properties, both water and electricity. At the time of the fire of the Lamanto House, the electricity and water, both through JEA, had been set up by REO. REO received water and electricity bills from JEA by email. These utilities were paid online through REO's bank account with Key Bank in Colorado. On January 10, 2018, the water and power were not working at the Lamanto House and the Defendant was using a generator for power.

4. When REO initially acquired the Lamanto House, REO had to foreclose on it. Thereafter, the Lamanto House was rented out to tenants for about seven

years. The final tenant's lease expired on July 31, 2017. From approximately August 2017 until the fire, REO was working to renovate the Lamanto House and prepare it for sale by Lighthouse. Lighthouse continued to bill REO for fees incurred from management and care of the Lamanto House through October of 2017. The Lamanto House was vacant while it underwent extensive repairs to prepare it for sale. The REO account for the Lamanto House was transferred in Lighthouse from an individual managing the rental properties to a different individual who would handle the sales of REO's properties.

5. Prior to the July 31, 2017 expiration date for the Lamanto House lease, REO assigned the Lamanto House to the Defendant to renovate for sale. The Defendant had a business credit card provided by REO, a Visa Chase Business Card, that he used to make purchases at Home Depot and Lowes for materials to renovate the Lamanto House and some of REO's other Florida properties. The Defendant was wired money for renovations for the Lamanto House and other Florida properties.

6. REO's bank account at Key Bank in Denver, Colorado was used to wire money to the Defendant for the home renovations and to pay the Defendant. This included payment for stays at hotels by the Defendant in the course of his work and for equipment rental from places such as Sunbelt Rentals-a nationwide equipment company. REO's bank account was also used to pay the Defendant by check. In addition, this bank account was used to pay the business credit card the Defendant used. Further, this bank account was

4

used to pay the property taxes and insurance on the home, as well as the utilities for the house.

7. REO insured the Lamanto House with IRG Underwriters, now known as Landmark Insurance Group. This was set up through a broker in Englewood, Colorado. This policy covered multiple uses including rental and mere use by the property owner. At the time of the fire, REO had not informed IRG that the Lamanto House no longer had tenants. In the event the Lamanto House did not sell or did not receive a good offer, REO intended to rent the home out again as it had previously done.

8. On January 10, 2018, the Lamanto House was set on fire by the Defendant. Eyewitnesses observed him walking away from the Lamanto House that had just erupted into flames. Officers of the Jacksonville Sheriff's Office (JSO) located him near the house fire, getting into the backseat of a cab, and arrested him.

9. The State Fire Marshal dispatched an arson investigator to the Lamanto House fire. The arson investigator learned from firefighters that they detected the smell of gasoline at the fire and found a gas can by the back door and an LP tank, a gas can by the garage door, and possibly a paint thinner can in living room area. The arson investigator determined the area of origin was in multiple rooms-living room, dining room and kitchen. Chemicals commonly used for remodeling, painting, or staining were reported and/or discovered in the area of origin. A certified accelerant detecting K-9 (Fresca) alerted to the presence of accelerants in five areas of the residence. Burned debris evidence and the

Defendant's clothing were sent to the Department of Financial Services Bureau of Forensic Fire and Explosives Analysis Lab for analysis. Also sent for analysis was a liquid sample from a red plastic container commonly used for storing and transporting gasoline. The container was discovered on the east side of the kitchen on the floor. All of the samples, including the Defendant's clothing, came back positive for the presence of accelerants. The arson investigator observed extensive fire damage to the Lamanto House and determined the estimated damage for the house was $64,000.

10. The Defendant was arrested for arson. He had singe marks on his face and arm. He was interviewed by JSO Detective McClean and Arson Investigator Douglas. The Defendant agreed to speak with them and signed a copy of his constitutional rights form. The Defendant said he worked on flipping houses for REO. The Defendant admitted he was responsible, saying "I did it." He said "I never expected it to be that big of a concussion." When asked why he did it, he said for the $30,000 he lost to workers who were supposed to renovate the Lamanto House, but just took the money and did not do any work. When asked how he was going to get $30,000 to repay the debt to his company, he said he already had it from different work.

11. During the consensual search of the Defendant's vehicle at the Marble Waters Hotel where he was staying, a Home Deport receipt was found. The receipt indicated that one gallon of acetone, one gallon of lacquer thinner, and a 2 pack of batteries were purchased on January 9, 2018, at approximately 4:57 p.m. Video surveillance obtained from Home Depot

shows the Defendant's vehicle (Hummer H2) and the Defendant purchasing the items on the receipt.

## Conclusions of Law

It is a Federal crime to attempt to maliciously damage and attempt to damage or destroy by fire or explosive any building, vehicle, or any other real or personal property used in interstate or foreign commerce or affecting interstate or foreign commerce. A Defendant can be found guilty of this crime only if all the following facts are proven beyond a reasonable doubt: (1) the Defendant attempted to damage or destroy the building described in the indictment by means of a fire; (2) the Defendant acted intentionally or with deliberate disregard of the likelihood that damage or injury would result from his acts; and (3) the building that the Defendant damaged and attempted to damage or destroy was used in interstate or foreign commerce. "Interstate or foreign commerce" is trade and other business activity between people and entities located in different states or between people and entities located in the United States and outside of the United States. The Government must prove that the property the Defendant is accused of damaging or attempting to damage was actually used for a function that involved or affected interstate or foreign commerce.

In stipulating to the facts set forth in the Stipulation, Sanchez acknowledged that he agreed that all the stipulated facts were true and correct. He further acknowledged that the stipulated facts would be used against him in the course of the bench trial or at any subsequent proceeding. He nonetheless reserved his right to make a motion for judgment of acquittal under Rule 29, which he did. In his motion, Sanchez challenged only whether the Government had established beyond a reasonable

doubt that the Lamanto House was property used in interstate commerce.  See Doc. 43 (Defendant's Corrected Trial Memorandum on the Proof Required to Satisfy the Interstate Commerce Element of the Federal Arson Statute), filed November 16, 2018; Doc. 47 (Motion for Judgment of Acquittal), filed November 21, 2018.  After considering the facts set forth in the Stipulation and the arguments of the parties, the Court determined in a separate Order, see Doc. 51 (Order), filed January 3, 2019, that the Lamanto House was property used in interstate commerce.  See Order at 21.  The Court incorporates its discussion of the Government's satisfaction of the interstate commerce element here.

The evidence before the Court therefore establishes beyond a reasonable doubt that on January 10, 2018, the Defendant, Pedro Sanchez,  maliciously damaged by fire the structure located at 8579 North Lamanto Avenue in Jacksonville, FL; that he did so intentionally; and that at the time he did so, the structure, owned by REO Asset Acquisition, LLC, was a structure used in interstate commerce.  Accordingly, based on the findings of this Court, the undersigned finds Sanchez guilty of felony arson under 18 U.S.C. § 844(i) as charged in the Indictment, and the Defendant is adjudged guilty of such offense.

Sentencing for the Defendant is set for **Monday, April 1, 2019, at 9:30 a.m.** before the undersigned in Courtroom 10B.

**DONE AND ORDERED** in Jacksonville, Florida this 3rd day of January, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc26

Copies to:

Counsel of Record